Christopher M. Neumeyer (CSB No. 151994)
Asia Law Foreign Legal Affairs Law Firm
17F, Suite B, No. 167
Dunhua North Road
Taipei 10549, Taiwan
Telephone: +886-2-2717-1999
chrisneumeyer@asialaw.biz

Attorneys for Defendants
Quanta Storage, Inc. and Quanta Storage America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | MDL Docket No. 3:10-md-02143-RS-JCS |
| HEWLETT-PACKARD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TOSHIBA CORPORATION, et al.,<br><br>Defendants. | Case No. 3:13-cv-05370-RS<br><br>**DEFENDANTS QUANTA STORAGE, INC.'S AND QUANTA STORAGE AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing<br><br>Date:     October 30, 2014<br>Time:    1:30 p.m.<br>Judge:   The Hon. Richard Seeborg<br>Location: Courtroom 3, 17th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 30, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard, Defendants Quanta Storage, Inc. ("QSI") and Quanta Storage America, Inc. ("QSA") will and hereby do move the Court, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing all claims asserted against QSI and QSA by plaintiff Hewlett-Packard Company ("HP" or "Plaintiff") in its First Amended Complaint on the grounds stated herein.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any further briefs submitted to the Court, the record and filings in this case, any oral argument of counsel and such other and further matters as the Court may consider.

## STATEMENT OF RELIEF SOUGHT

The undersigned defendants ("Defendants" or the "Quanta Defendants") move pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss with prejudice all or some of the claims asserted against defendants QSI and QSA by Plaintiff in its First Amended Complaint dated May 8, 2014 on the grounds that:

A. Plaintiff's claims against QSI should be dismissed for lack of personal jurisdiction.

B. Plaintiff's antitrust claims should be dismissed for failing to state a claim under which relief can be granted.

C. Plaintiff's contract claims should be dismissed for failing to state a claim under which relief can be granted.

D. Plaintiff's antitrust claims should be dismissed pursuant to *Illinois Brick*.

E. Plaintiff's claims should be dismissed pursuant to the Foreign Trade Antitrust Improvements Act of 1982.

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Hewlett-Packard Company is a U.S. corporation with subsidiaries in numerous foreign countries. HP alleges that its subsidiaries purchased billions of dollars of optical disk drives ("ODDs") at inflated prices due to a purported price-fixing and bid-rigging conspiracy.

HP's first amended complaint (the "Complaint" or "Am. Compl.") fails to adequately allege the Court's personal jurisdiction over defendant Quanta Storage Inc. ("QSI"), and fails to adequately allege that QSI and co-defendant Quanta Storage America Inc. ("QSA") participated in the alleged conspiracy. For example, the Complaint fails to identify a single auction that QSI or QSA participated in, a single instance of them selling ODDs that were resold by others to HP, or a single act that QSI – a Taiwan company – ever committed in the forum state that might subject it to personal jurisdiction in California. The Complaint also fails to state claims for breach of contract and the implied covenant of good faith and fair dealing, fails to adequately allege direct purchaser standing under *Illinois Brick*, and fails to establish grounds for exemption from the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"). Accordingly, Plaintiff's claims against QSI and QSA should be dismissed.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

HP is a Delaware company with its worldwide headquarters in Palo Alto, California and North American regional headquarters in Houston, Texas. Am. Compl. ¶16. Defendants are eighteen Japanese, Korean, Taiwanese and U.S. companies that allegedly manufactured, sold and distributed ODDs in the United States and caused them to be imported into the United States. Movant QSI is based in Taiwan, and movant QSA is based in Fremont, California. *Id.* ¶¶50-51. (QSI and QSA are, collectively, the "Quanta Defendants.")

HP alleges that it entered into contracts with certain defendants, and that those contracts resulted in ODD purchases by HP's foreign subsidiaries. *Id.* ¶21. HP claims that those purchases were at artificially inflated prices due to a conspiracy among the defendants and their co-

conspirators that lasted from at least as early as January 1, 2004 through at least January 1, 2010 (the "Conspiracy Period").  The alleged conspiracy included rigging bids for ODDs, exchanging confidential information concerning pricing, sales, production and bidding strategies, and entering into agreements to set prices for ODDs sold to HP and other U.S. companies.  *Id*. ¶1.

HP's Complaint contains few allegations specific to the Quanta Defendants.  The Complaint alleges that both QSI and QSA "manufactured, sold, and/or distributed ODDs throughout the United States and directly caused ODDs to be imported into the United States," but it does not allege that the Quanta Defendants manufactured, sold, or distributed any ODDs in California.  *Id*. ¶¶50-51.  HP alleges that "Quanta"[1] manufactured ODDs for co-conspirators Philips & Lite-On Digital Solutions Corporation and Philips & Lite-On Digital Solutions USA, Inc. ("PLDS"), for coconspirator Philips BenQ Digital Storage ("PBDS"), and for defendant Sony Optiarc.  *Id*. ¶108.  But HP does not allege the time frame of these alleged relationships, whether any of those ODDs were shipped into the United States, or whether HP purchased or otherwise received any of those ODDs.

With respect to the alleged conspiracy, HP accuses "Quanta" of having a single discussion with an "HLDS [co-conspirator Hitachi-LG Data Storage Inc.] guy" in October 2008 regarding an "upcoming ODD procurement event" involving HP.  *Id*. ¶¶151, 152.  HP does not allege that "Quanta" was part of that procurement event, whether that event resulted in a specific contract, or whether either QSI or QSA sold any ODDs pursuant to that particular contract.  The only other specific conspiracy allegation against the Quanta Defendants is that in October 2008 HLDS was in possession of unspecified "sensitive information" about "Quanta."  *Id*. ¶150.

HP does not allege that any products manufactured by either QSI or QSA were ever shipped to HP or its affiliates.  Nor does HP allege that any QSI or QSA products were sold to

---

[1] Other than the two early paragraphs that allege certain foundational facts concerning QSI and QSA, HP does not differentiate between QSI and QSA – it instead refers to them collectively as "Quanta."

HP, either through the allegedly rigged bids, allegedly breached contracts, or otherwise.

## III. LEGAL STANDARD

### A. Dismissal Under FRCP Rule 12(b)(2)

An action is subject to dismissal under FRCP Rule 12(b)(2) if the court lacks personal jurisdiction over the moving defendant. A plaintiff "has the initial burden of demonstrating facts justifying the exercise of jurisdiction." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). The exercise of personal jurisdiction is proper only when a defendant has "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In judging minimum contacts, courts focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Where a federal statute governing personal jurisdiction applies, as in this case, the district court applies the law of the state in which the district court sits. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). "California permits its courts to exercise personal jurisdiction to the extent permitted by the federal due process clause." *Ballard v. Savage*, 65 F.3d 1495, 1500 n. 4 (9th Cir. 1995).

California courts recognize two types of personal jurisdiction: general and specific. General jurisdiction exists when the activities of a nonresident in the forum state are substantial, continuous and systematic, or extensive and wide-ranging. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445 (1952). Specific jurisdiction exists when (1) the nonresident defendant performed an act or consummated a transaction within the forum by which it purposefully availed itself of the privilege of conducting activities in the forum, (2) the claim is one which arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Ballard v. Savage,* 65 F.3d at 1498.

### B. Dismissal Under FRCP Rule 12(b)(6)

Pursuant to FRCP Rule 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or failure to allege sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc*. 749 F.2d 530, 533-34 (9th Cir. 1984).

Mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and may not rely on mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. Courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The Supreme Court has directed courts to apply the above standards rigorously, particularly in antitrust cases, to avoid inflicting the enormous burden and expense of litigation on innocent parties. *Twombly,* 550 U.S. at 557-58. In particular, the Court has admonished lower courts "against sending the parties into discovery when there is no reasonable likelihood that the plaintiff . . . can construct a claim from the events related in the complaint." *Id*. at 558; *see also Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir. 2008).

### IV. <u>ARGUMENT</u>

#### A. <u>Plaintiff's claims against QSI should be dismissed for lack of personal jurisdiction.</u>

HP's Complaint fails to plead facts supporting the exercise of personal jurisdiction, either

-5-

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
CASE NO. 3:13-CV-05370-RS

general or specific, over QSI.

HP acknowledges that QSI is a Taiwan company, with its principal place of business in Taiwan. Am. Compl. ¶50. But HP does not allege any specific facts that would show that QSI had substantial, continuous, systematic, or extensive and wide-ranging activities *within the State of California* which would give rise to general jurisdiction, most likely because QSI did not engage in any such activities. HP's allegation that QSI "manufactured, sold, and/or distributed ODDs throughout the United States and directly caused ODDs to be imported into the United States" (*id.*) – an accusation that QSI strenuously denies – has nothing to do with California, and thus cannot support personal jurisdiction in California.

Nor does HP sufficiently allege facts supporting specific jurisdiction. HP does not allege a single specific act by QSI in California related to the purported conspiracy. Mere allegations against the defendants generally *(see, e.g.*, Am. Compl. ¶14) are insufficient "to raise a right to relief above the speculative level" because HP cannot rely on mere "labels and conclusions" to establish personal jurisdiction. *Twombly*, 550 U.S. at 555.

### B. **Plaintiff's antitrust claims should be dismissed for failure to state a claim.**

All of HP's antitrust claims are subject to the same standards for dismissal for failure to state a claim[2] – that is, HP must allege specific facts sufficient "to raise a right to relief above the speculative level" (*Twombly,* 550 U.S. at 555) and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

In antitrust cases, "[t]o allege an agreement between anti-trust conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin."

---

[2] *See County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1160 (9th Cir. 2001) (applying Rule 12(b)(6) to California Cartwright Act and UCL claims); *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 128 F. Supp. 2d 988, 995 (N.D. Tex. 2001) (applying Rule 12(b)(6) to the Texas Free Enterprise and Antitrust Act).

*Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n. 10).  The complaint must "include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1019, 1117 (N.D. Cal. 2008) ("*In re TFT-LCD*").  In short, the complaint must "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048.

In the instant case, HP lumps QSI and QSA together with all the other defendants as the subject of general, conclusory allegations, but it fails to allege any specific facts about QSI or QSA that would raise its right to relief above a speculative level.  In particular, Plaintiff fails to allege specific facts concerning QSI or QSA:

- Participating in any bidding process with HP concerning ODDs;
- Entering into any agreement of any kind with any other defendant or co-conspirator;
- Entering into any agreement with any other defendant for the manufacture or sale of ODDs that are to be sent to HP or its foreign subsidiaries as a result of any price-fixed bid; or
- Selling any ODDs to HP or delivering any ODDs to HP in the United States.

Only three paragraphs of the Complaint contain specific allegations about the Quanta Defendants' purported involvement in the alleged conspiracy:

- Paragraph 150 alleges that in 2008 an HLDS employee "reported sensitive information regarding [] Quanta."  HP fails to describe the nature of the "sensitive information," how it was obtained, from whom, whether it was with or without the Quanta Defendants' knowledge, and the connection between that information and any bid-related act of the purported conspiracy.
- Paragraphs 151 and 152 allege that a "Quanta" employee sent an e-mail to other "Quanta" employees about a dinner with an HLDS employee during which price issues related to an "upcoming ODD procurement event" were allegedly discussed.

These three paragraphs do not allege anything other than a single meeting with a representative of one other company.  The paragraphs fail to allege the Quanta Defendants' participation in a specific procurement event, their knowledge of any conspiracy, or their conscious decision to join that alleged conspiracy.  As such, the allegations are insufficient as a matter of law.  *See Nokia Corp. v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, MDL. No. 1827, 2010 U.S. Dist. LEXIS 64930, at *23-24 (N.D. Cal. June 29, 2010) (granting dismissal after analysis of only those allegations that specifically targeted the moving defendant; "the complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it") (citation omitted).

Despite – or perhaps because of – the dearth of specific facts supporting its claims, HP seeks to imply the Quanta Defendants' guilt by alleging that (a) some defendants formed strategic alliances with others that provided opportunity and incentive to conspire for illegal purposes (Am. Compl. ¶¶105-109); (b) some defendants have a purported history of collusion in other markets (*id*. ¶¶167-189); and (c) the Department of Justice ("DOJ") launched a criminal investigation concerning ODDs and some defendants were apparently implicated (*id*. ¶¶125-135).  HP fails to mention QSI or QSA specifically in those allegations.  HP also ignores the fact that on April 21, 2014, the DOJ sent notice to the Quanta Defendants' counsel stating that "the Optical Disk Drives grand jury investigation is closed," and that the Quanta Defendants were welcome to pick up their documents from the DOJ's office or have them destroyed.  *See* Exhibit A.[3]

This Court recently granted a motion to dismiss several Pioneer defendants in the pending antitrust lawsuit filed by Acer Inc., based on the same price-fixing conspiracy alleged in this action.  *Acer Inc., et al., v. Lite-On IT, et al.,* No. 3:13-cv-04991-RS, Doc. 1344 (N.D. Cal. July 10, 2014).  Pioneer's motion argued that Acer's complaint contained virtually no factual

---

[3] The DOJ notice is a matter of public record that is the proper subject of judicial notice.

allegations to show it ever joined or participated in the alleged conspiracy. In granting that motion, this Court explained that plaintiffs must at least "include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy," and concluded that "the sparse and conclusory allegations regarding Pioneer" failed to meet that standard. *Id.* at p. 8.

The same principles apply here: HP has failed to plead sufficient factual allegations about QSI and QSA to indicate their knowledge of the alleged conspiracy, their role in it, and the actions they purportedly took in furtherance of it. In short, HP's Complaint fails to answer any of the basic questions – who, did what, to whom (or with whom), where and when (*Kendall*, 518 F.3d at 1048) and fails to allege sufficient facts "to raise a right to relief above the speculative level" (*Twombly,* 550 U.S. at 555).

### C. **Plaintiff's contract claims should be dismissed for failure to state a claim.**

HP's Fifth and Sixth Causes of Action are for alleged breach of contract and breach of the implied covenant of good faith and fair dealing. HP alleges that "HP and Defendants entered into multiple agreements involving the purchase and sale of ODDs [and] Defendants breached those agreements repeatedly and in a variety of ways, including by their failure to comply with applicable law and to act fairly and in good faith." Am. Compl. ¶10. HP also alleges "[p]urchases of ODDs were subject to HP's Purchase Order Terms and Conditions," which "typically contained" one provision requiring the seller to comply with applicable laws and another provision prohibiting the seller from unauthorized use or disclosure of HP's Confidential Information. *Id*. ¶¶203-204.

HP never specifies which defendants purportedly entered into agreements with it, or which defendants entered into agreements containing those "typical" provisions. In particular, HP never alleges that QSI or QSA signed or breached any contract with HP.

For a breach of contract claim, a plaintiff must allege facts to support the existence and terms of a contract with respect to each defendant from whom it seeks relief. *See Newman v. Capital One Servs*., No. C 05-05409 JW, 2006 U.S. Dist. LEXIS 54820, at *10-11 (N.D. Cal.

June 12, 2006) ("Plaintiffs failed to identify the Defendants with which they contracted, the actual contract involved with each Defendant, and the actions of each Defendant that breached the actual agreement."). The purpose of such pleading requirements is to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

While HP fails to specify whether Texas law or California law applies to the contract claims, the laws of either state require a plaintiff asserting a claim for breach of contract to allege (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Ladjevardian v. TD Ameritrade, Inc*., No. H-13-1017, 2013 U.S. Dist. LEXIS 177546, at *4 (S.D. Tex. Dec. 18, 2013); *Gutierrez v. State Farm Mut. Ins. Co*., No. 5:11-cv-03111 EJD, 2012 U.S. Dist. LEXIS 14789, at *11-12 (N.D. Cal. Feb. 7, 2012). Under either state's law, HP must plead *as to each individual defendant* the existence of a contract and the allegedly breached terms of that contract. *See Schauer v. Cargill, Inc*., Case No. SA-02-CA-0827 OG, 2003 U.S. Dist. LEXIS 10035, at *20-21 (W.D. Tex. June 12, 2003) (finding that contract claims as to certain defendants did "not state a valid basis for relief" where plaintiffs failed to allege "the existence of a valid contract between plaintiffs and each defendant against whom plaintiffs seek relief"); *Lance v. Adams*, Case No. 1:11-cv-0 0323 OWW GSA, 2011 U.S. Dist. LEXIS 53851, at *11-12 (E.D. Cal. May 6, 2011) ("In any amended complaint, Plaintiffs are directed to clearly and plainly state whether a breach of contract claim is being asserted against all Defendants, and if so, how each Defendant breached its contract . . . A conclusory statement will not suffice.").

HP's Complaint fails to satisfy this basic test. It does not contain specific factual allegations regarding whether HP even had a contract with the Quanta Defendants, much less the terms of that contract and the nature of the Quanta Defendants' purported breach of those terms. This failure is fatal to HP's contract claims. *See, e.g., Radenbaugh v. State Farm Lloyds*, Case No. 4:13-cv-339-A, 2013 U.S. Dist. LEXIS 116759, at *10 (N.D. Tex. Aug. 16, 2013) ("No

plausible cause of action for breach of contract can be stated unless there is an allegation as to the exact nature of the contract, including a statement as to defendant's obligations under the contract, how defendant failed to comply with its contractual obligations, and how that damaged plaintiff.").

The Sixth Cause of Action fails for an additional reason: Texas law does not recognize an implied covenant of good faith and fair dealing unless there is a "special relationship" between the contracting parties. *Siens v. Trian, LLC*, Case No. A-11-cv-075-AWA, 2014 U.S. Dist. LEXIS 65411, at *12 (W.D. Tex. May 13, 2014) ("Under Texas law, a duty of good faith is not imposed in every contract, but only in special relationships marked by shared trust or an imbalance in bargaining power."); *see also McKenzie v. Wells Fargo Home Mortg., Inc.*, Case No. C-11-04965 JCS, 2012 U.S. Dist. LEXIS 155480, at *64 (N.D. Cal. Oct. 30, 2012). HP's Complaint contains no allegations in support of such a special relationship, including allegations of unequal bargaining power or shared trust. And even if HP were to plead such a relationship, Texas law would not impose a duty of good faith here; under Texas law "ordinary commercial relationships," such as those between a supplier and its customer, are insufficient to create a duty of good faith and fair dealing. *See Robinson v. Match.com, LLC*, No. 3:10-cv-2651-L, 2012 U.S. Dist. LEXIS 112742, at *49 (N.D. Tex. Aug. 10, 2012) (stating that the duty of good faith and fair dealing "does not extend to ordinary commercial contractual relationships"); *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex. App. Corpus Christi 1989) ("The 'special relationship' cause of action in tort for breach of the duty of good faith and fair dealing, however, does not extend to ordinary commercial contractual relationships such as the supplier-distributor relationship.")

### D. **Plaintiff's federal and Texas antitrust claims should be dismissed pursuant to *Illinois Brick*.**

In *Illinois Brick Co. v. Illinois*, 431 U.S. 72 (1977), the Supreme Court held that "only direct purchasers have standing under section 4 of the Clayton Act to seek damages for antitrust

violations." *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008) (citing *Illinois Brick*, 431 U.S. at 735). Under *Illinois Brick*, "only the first party in the chain of distribution to purchase a price-fixed product has standing to sue"; indirect purchasers are precluded from suing "based on unlawful overcharges passed on to them by intermediaries in the distribution chain who purchased directly from the alleged antitrust violator." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 864 (N.D. Cal. 2012) ("*In re CRT*").

In other words, "*Illinois Brick* created a 'bright line rule' that only plaintiffs who purchased products directly from alleged price-fixers have standing to pursue damages claims under federal law." *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, Doc. 531, p. 7 (N.D. Cal. Apr. 19, 2012). The Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code §15.01 *et seq.*, has an identical limitation. *See Abbott Lab. (Ross Lab. Div.) v. Segura*, 907 S.W.2d 503, 504 (Tex. 1995) (applying *Illinois Brick* and holding that indirect purchasers cannot recover under Texas deceptive trade practices act (DTPA); reasoning that "indirect purchasers cannot recover under the DTPA upon allegations on which recovery would have been barred if brought under the Texas Free Enterprise and Antitrust Act").

In the instant case, it is unclear whether HP is claiming that it purchased ODDs directly from defendants and alleged co-conspirators, or whether HP is claiming that its foreign subsidiaries did so. HP claims broadly that "HP purchased price-fixed ODDs directly from" defendants or co-conspirators, or from "agents," subsidiaries or "affiliates" of defendants or co-conspirators. Am. Compl. ¶17. (HP does not define what it means by "affiliates" or "agents.") But HP never identifies the specific entities from which it directly purchased ODDs,[4] and at one point HP states that it purchased "ODD product[s]" – not ODDs – from defendants. *Id.* ¶210.

---

[4] HP only identifies one specific ODD contract in the entire Complaint – "a June 1, 2009 Product Purchase Agreement with Sony Optiarc Inc. governing the purchase of ODDs" (Am. Compl. ¶205) – but HP does not allege making any direct purchases pursuant to that agreement. If HP purchased ODDs directly from Sony Optiarch or any other particular defendant, it had ample opportunity to allege as such. That it chose not to do so speaks volumes.

If HP was not itself the direct purchaser of ODDs, which the Complaint appears to acknowledge, then HP has no standing under *Illinois Brick*, and HP's individual federal and Texas antitrust claims should be dismissed. HP may still be able to pursue such claims as an assignee of its foreign subsidiaries' federal antitrust claims, but those claims are subject to dismissal under the Foreign Trade Antitrust Improvements Act, as discussed below.

### E. Plaintiff's claims based on foreign conduct should be dismissed for failing to allege sufficient facts to satisfy the requirements of the FTAIA.

The Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA"), provides that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations – unless" the domestic effect exception applies. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 985 (9th Cir. 2008). Plaintiff's Complaint falls afoul of the FTAIA in several respects.

First, the Complaint fails to allege facts sufficient to trigger the "import" exception to the FTAIA. HP alleges that various defendants imported ODDs and ODD Products into the United States at unspecified times (*see*, e.g., Am. Compl. ¶86), but it does not allege that the specific ODDs and ODD Products that were the actual subject of bid-rigging or price-fixing were imported into the United States by the defendants. If someone other than the defendants imported the items, then the import exception to the FTAIA does not apply. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL. No. 1827, 2010 U.S. Dist. LEXIS 65037, at *18-20 (N.D. Cal. June 28, 2010) (rejecting import exception where the plaintiff failed to allege that the defendants themselves imported the goods at issue).

HP's allegation that it bought "price-fixed ODDs" directly from defendants or co-conspirators, or from "agents," subsidiaries or "affiliates" of defendants or co-conspirators (Am. Compl. ¶17) does not alter the analysis. HP never explains what it means by "price-fixed ODDs," and it never claims that these particular ODDs were purchased pursuant to the allegedly rigged bids that underpin the purported conspiracy. Moreover, this allegation is undermined by

HP's apparent admission that the actual purchasers of ODDs were its foreign subsidiaries *(see, e.g.*, *id.* ¶¶20-21 (explaining that HP's subsidiaries issued the purchase orders for the ODDs at issue)) and its suggestion that it purchased "ODD product" (*i.e.*, products containing ODDs) and not ODDs themselves. *See id.* ¶210. Contradicted allegations are ignored for purposes of a motion to dismiss. *See Nexsales Corp. v. Salebuild, Inc.*, Case No. C-11-3915, 2012 U.S. Dist. LEXIS 7890, at *9-10 (N.D. Cal. Jan. 24, 2012) (rejecting allegation that was contradicted by other allegations); *Infostream Group, Inc. v. PayPal, Inc.*, Case No. No. C 12-748, 2012 U.S. Dist. LEXIS 122255, at *30-31 (N.D. Cal. Aug. 28, 2012) (same).

Indeed, HP appears to be attempting to plead around the FTAIA by suing in its own name while prosecuting what are, in effect, claims based on foreign purchases by HP's foreign subsidiaries. *See* Am. Compl. ¶¶20-21. But the fact remains that "mere allegations of a global conspiracy and ODDs eventually entering the domestic market are not sufficient to support claims based on overseas transactions." *Acer,* No. 3:13-cv-04991-RS, Doc. 1344, p. 4.

Second, the Amended Complaint fails to allege facts sufficient to trigger the "domestic effects" exception to the FTAIA. To satisfy the "domestic effects" exception, (1) the alleged anticompetitive conduct must have a direct, substantial and reasonably foreseeable effect on domestic commerce, and (2) such effect must give rise to the plaintiff's claim. *F-Hoffmann-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 159 (2004). "Conduct has a 'direct' effect for purposes of the domestic effects exception to the FTAIA if it follows as an immediate consequence of the defendants' activity." *United States v. Hui Hsiung*, Case No. 12-10492, 2014 U.S. App. LEXIS 13051, at *53-54 (9th Cir. July 10, 2014) (citation omitted).

HP does not plead specific facts showing that any domestic harm was an "immediate consequence" of the alleged conspiracy. For example, HP does not allege that any specific act of purported bid-rigging led to an immediate increase in the price that HP or any other buyer actually paid for ODDs that were shipped into the United States. HP's conclusory allegations to the contrary (*see, e.g.*, Am. Compl. ¶¶189) are insufficient as a matter of law. *Daniels-Hall*, 629

F.3d at 998.

Nor does HP allege how any domestic effects of the alleged conspiracy gave rise to the harm suffered by HP's foreign subsidiaries and affiliates. HP alleges it obtained assignments of claims from its foreign subsidiaries and affiliates, because it was those foreign entities which purchased the ODDs. Am. Compl. ¶20. However, foreign harms caused by anticompetitive conduct are not compensable unless they result from the domestic effect of such conduct. *Empagran, supra*, 542 U.S. 155 (rejecting antitrust claim because any adverse foreign effect was independent of the domestic effect); *In re DRAM, supra*, 546 F.3d at 988 ("defendants' conspiracy may have fixed prices in the United States and abroad . . . but [Plaintiff] has not shown that the higher U.S. prices proximately caused its foreign injury of having to pay higher prices abroad."); *In re Rubber Chemicals Antitrust Litigation,* 504 F.Supp.2d 777, 786 (N.D.Cal. 2007) ("it must be the domestic effects of the Defendants' anticompetitive conduct, rather than the anticompetitive conduct itself, which gives rise to Plaintiffs' foreign injuries").

Finally, if the FTAIA bars the federal antitrust claims against QSI and QSA, it bars related state law claims as well. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, Case No. No. 07-md-01819 CW, 2010 U.S. Dist. LEXIS 141968, at *39-40 (N.D. Cal. Dec. 31, 2010); *Acer Inc., et al., v. Lite-On IT, et al.,* No. 3:13-cv-04991-RS, Doc. 1344, p. 6, n. 2 (N.D. Cal. July 10, 2014) (citing *SRAM*).

## V.     CONCLUSION

For these reasons, defendants QSI and QSA respectfully request that the Court dismiss with prejudice all claims asserted by HP against them.

/ / /

/ / /

Dated:  August 8, 2014        ASIA LAW FOREIGN LEGAL AFFAIRS LAW FIRM

By:  **/S/ Christopher M. Neumeyer**

Christopher M. Neumeyer (CSB No. 151994)
Asia Law Foreign Legal Affairs Law Firm
17F, Suite B, No. 167
Dunhua North Road
Taipei 10549, Taiwan
Telephone: +886 (2) 2717-1999
chrisneumeyer@asialaw.biz

Attorneys for Defendants
Quanta Storage, Inc. and Quanta Storage America, Inc.

### **CERTIFICATE OF SERVICE**

In accordance with Rule 5-5 of the Local Rules of Practice in Civil Proceedings Before the United States District Court for the Northern District of California, I, Christopher M. Neumeyer, hereby certify under penalty of perjury under the laws of the United States of America that on August 8, 2014, a true copy of the above document was filed through the Court's Case Management/Electronic Case Filing ("CM/ECF") System and served by that System upon all counsel of record registered for the System and deemed to have consented to electronic service in the above-captioned case.  Any other counsel of record will be served by electronic mail and/or first-class mail on the same date.

Dated:     August 8, 2014        ASIA LAW FOREIGN LEGAL AFFAIRS LAW FIRM

By:  **/S/ Christopher M. Neumeyer**

Christopher M. Neumeyer

Attorneys for Defendants
Quanta Storage, Inc. and Quanta Storage America, Inc.